Opal C. BARR et al., Appellants,

v.

John P. THOMPSON et al., Appellees.

No. 15963.

Court of Civil Appeals of Texas.

Dallas.

Aug. 4, 1961.

Rehearing Denied Sept. 29, 1961.

Strasburger, Price, Kelton, Miller & Martin, Royal H. Brin, Jr., John A. Erhard and Alfred L. Ruebel, II, Dallas, for appellants.

Locke, Purnell, Boren, Laney & Neely, Jackson, Walker, Winstead, Cantwell & Miller, Neil Williams, Walton Grayson III, Storey, Armstrong & Steger and John K. DeLay, Jr., Dallas, for appellees.

WILLIAMS, Justice.

This appeal is from an interlocutory decree of a District Court of Dallas County, Texas that temporarily enjoined appellants from prosecuting a certain civil action previously filed and now pending in a Court of Chancery of the State of Delaware, and from proceeding any further therein except to dismiss the complaint.

### The Delaware Suit

The Delaware suit was instituted on February 17, 1961 by Opal C. Barr, Rubye M. Zelder and The Sailer Company, as plaintiffs, against John P. Thompson and numerous other individuals, trustees, partnerships, and corporations, as defendants. The defendants in the Delaware case were primarily a group of directors of Southland Corporation, who were charged in that case with having seized for their personal benefit a corporate opportunity which should have been made available to and developed on behalf of the Southland Corporation and its shareholders. Plaintiffs in the Delaware suit brought that action derivatively for the right and benefit of said corporation charging the defendants with using the personnel and other assets of the Southland Corporation for their own personal benefit in establishing a chain of approximately two hundred 7-Eleven stores in Florida and elsewhere, operating same under the name and in the same manner as 7-Eleven stores were being operated in Texas by Southland Corporation. The primary relief sought by plaintiffs in the Delaware action was the imposition of a trust on the interest of the defendants in a Florida partnership and its affiliated corporations for the benefit of Southland Corporation and its shareholders, and the recovery on behalf of the Southland Corporation and its shareholders of all damages sustained by the Corporation by virtue of the alleged seizure by the defendants of the corporate opportunity. Southland Corporation had been incorporated under the laws of Delaware but had not operated or done business in that State. The Delaware Court, perforce the Delaware Code, Title 10, Sec. 366, entered an order appointing a sequestrator to seize all shares of the capital stock of Southland Corporation standing in the name of the defendants. Such sequestration was accomplished and the Southland Corporation responded in that action by setting forth a list of the stockholders. Under the Delaware law a stockholder in the Delaware Corporation must personally appear in the Delaware Court, even though he is not a resident of Delaware, or suffer the risk of a default judgment and the forfeiture of all of his stock in the Delaware Corporation. Accordingly, the stockholders, though not actually residents of Delaware and not otherwise subject to the processes of the Delaware Courts in personam, entered their appearance in the Delaware suit.

### The Texas Suit

On March 3, 1961 this action was instituted in the District Court of Dallas County, Texas by John P. Thompson and 44 other plaintiffs, including all of the defendants in the Delaware action, against Opal C. Barr, Rubye M. Zelder, and The Sailer Company, being all of the plaintiffs

in the Delaware action. Plaintiffs' original petition alleges that there exists an actual controversy arising out of certain claims being asserted against some of the parties to the suit by the defendants in this suit who are also claimants in a suit filed by them in Delaware. Plaintiffs then alleged facts contrary to such asserted claims and in detail set out the history, ownership, and manner of operation of the Florida partnership. The plaintiffs' petition enumerates the defendants named in the Delaware suit and further points out that several of the Florida partners are not stockholders in the Southland Corporation and are not parties defendant in the suit brought in Delaware. Plaintiffs ask the court for a declaration under the provisions of the Texas Uniform Declaratory Judgment Act, Vernon's Ann.Civ.St. art. 2524–1 et seq., that Southland had no corporate opportunity in the State of Florida when the Florida partnership was formed, or thereafter, and that formation and organization of the Florida partnership did not compete with or injure Southland or its stockholders, and that none of the officers or directors of said Southland had any obligation to Southland or its stockholders on account of the origination or operation of the Florida partnership or the companies that leased properties to the Florida partnership. In addition to the declaratory relief requested, plaintiffs' petition points out the impossibility of the continuance of the Florida partnership, and also the Independent Ice Company, in view of the claims being asserted by defendants (plaintiffs in the Delaware action) and request the court to dissolve such partnerships and make proper distribution of the assets thereof. Relief is also sought in the form of an order confirming the ownership of the general and limited partners in and to the assets of the limited partnership known as 7-Eleven Stores, Ltd., (referred to as the Florida partnership) and also confirmation of the ownership of the corporation's 7-Eleven, Inc., Jaytex Realty Co., Haskell Realty Corporation, Flotex Corporation and Marmar of Texas, Inc., in and to the respective assets of said corporations.

In support of their request for equitable relief in the form of a temporary injunction, restraining the defendants (plaintiffs in the Delaware action) from further prosecuting the Delaware suit pending the trial of the Texas action, plaintiffs allege that the defendants have elected to harass the plaintiffs in the Texas suit by instituting such derivative stockholders suit in Delaware, merely as a means of asserting unfair pressures in an attempt to force the Southland Directors and the Florida partners and the other defendants to litigate and defend same in a faraway and inconvenient and more expensive forum; that none of the plaintiffs in the Delaware action reside in Delaware or is a citizen of Delaware and that none of the defendants in the Delaware suit resides in or is a citizen of Delaware with the exception of Southland Corporation which was organized under the laws of Delaware but has it principal office and place of business in Dallas, Dallas County, Texas; that many of the Texas parties own no stock in Southland and are not subject to the quasi in rem jurisdiction which the Delaware Court asserts through seizing whatever Southland stock is owned in the Delaware suit and therefore no effective decree could be handed down in Delaware affecting the rights of those parties not before the court; that to seek or employ the Delaware court's jurisdiction over the shares of the Southland stock in such a manner as to compel or force the appearance of the parties based on such appearance amounts to a distortion or an inequitable attempted use of power based on sequestration; that both plaintiffs and defendants whose rights may be affected are now properly before the Texas court and subject to the jurisdiction of the Texas Court for final relief of all issues between the parties; that plaintiffs are threatened with eminent and irreparable injury by the harassing action of the defendants in their attempt to assert jurisdiction in Delaware over some of the plaintiffs in this suit through the sequestration of stock of the Southland Corporation and by the attempt to impress a trust on assets com-

pletely outside the jurisdiction of the Delaware court. Further plaintiffs allege irreparable injury by attempt to impose extraordinary and unnecessary expense on the parties thereto in defending their rights in a distant jurisdiction when all of the directors of the Southland Corporation reside in Dallas and Tarrant Counties, Texas; by the probable necessity of defendants bringing additional suits ancillary to the Delaware action and the consequent burden and expense of defending a multiplicity of suits; by the impounding of the stock of the Southland Corporation and resulting prohibition of sale of such stock, or impounding of proceeds; and by the casting of cloud on the title of some of the plaintiffs' ownership of properties in the Florida partnership.

## Testimony in Texas Suit

Upon the application for temporary injunction the trial court heard the testimony of John P. Thompson, President of the Southland Corporation, to the effect that while Southland Corporation was originally incorporated under the laws of Delaware, its principal place of business is and has been in Dallas, Texas; all of the books and records of the corporation are kept and maintained in Dallas, Texas; all of the parties plaintiff and all of the parties defendant in the Texas suit are either residents of Dallas, or have subjected themselves voluntarily to the Texas jurisdiction; that a large number of the plaintiffs in the Texas action are not parties defendant in the Delaware suit and are not susceptible to the Delaware jurisdiction and process; that if the issues in the Delaware suit are to be litigated in Delaware rather than in Texas it would be necessary to transport a large number of persons from Texas to Delaware including witnesses, parties, and their Dallas attorneys, all at enormous expense, amounting to many thousand dollars for each trip to Delaware; that trial in Delaware would require the employment of additional counsel in Delaware at an additional expense; that

the records already under subpoena are voluminous, including some 105 file cases or two truck loads of records; that it would be oppressive and inconvenient in having the corporate or partnership books, records and other papers of the corporation to be transported to Delaware and kept there during an extended trial; that the necessary attendance of the officers and directors and key employees of the Southland Corporation during the trial in Delaware would interfere materially with the orderly day by day operation of the business in Texas; that the entire case can be litigated here in Texas where all of the witnesses are present, and where the records are present, and where there would be a minimal amount of interference of the continued conduct of the business and the company's activities. In addition to this oral testimony the court considered the voluminous records, including the pleadings and other actions taken in the Delaware case. Following the hearing the trial court entered an order granting the temporary injunction, restraining the defendants from further prosecuting the cause in Delaware pending the outcome of the Texas case. From that order this appeal reaches this Court.

## Opinion

Appellants present four points of error: (1) the error of the trial court in issuing a temporary injunction restraining the appellants from further prosecuting their action theretofore filed in the State of Delaware; (2) the error of the trial court in sustaining the objection of the appellants to the evidence which allegedly proved the charges of appellants against certain of the appellees with having been guilty of breach of fiduciary relationship with the Southland Corporation; (3) the error of the trial court in refusing to dismiss the suit; and (4) error of the trial court in permitting appellees to offer in evidence over appellants' objection the pleadings in this case.

At the outset of this opinion we desire to reiterate and emphasize that the

trial in the District Court was confined solely to the issue of the application for equitable relief in the form of a temporary injunction. This was not a trial of the case on the merits. The trial judge was emphatic in his decision not to hear testimony relating to merits of this case but to confine his decision solely to the question of the propriety of granting equitable relief as prayed for by appellees. Accordingly, there is entirely no merit in appellants' second point relating to the refusal of the trial judge to permit testimony going to the merits of the case. In an action of this kind it is neither necessary nor appropriate to try the case fully. It is only necessary for the proponents of the application for equitable relief to show a reasonable necessity therefor. The testimony sought to be introduced by appellants went to the merits of the case and was not necessary to enable the trial judge, as chancellor, to adjudicate the equitable questions involved. Appellants' second point is overruled.

Appellants' third point complaining of the action of the trial court in refusing to dismiss the suit is also overruled. Appellants, in oral argument, admit that there is no merit to this point on this appeal. Appellants' fourth point is also overruled as being without merit.

We now come to the only real point in this case. The question clearly and squarely presented here is whether the trial court, sitting as chancellor, abused his discretion in granting the temporary injunction. The rules governing appellate review from the granting of an interlocutory order are different from those having to do with an appeal from a final judgment. 24–A Tex.Jur. "Injunctions" § 265. Our Supreme Court has clearly patterned the way for us to follow in Texas Foundries v. International Moulders & Foundry Workers' Union, 151 Tex. 239, 248 S.W.2d 460, 462, wherein it said:

"The granting or refusing of a temporary injunction is subject to a very different character of appellate re-

view from the granting or refusing of a permanent injunction. The trial court is clothed with broad discretion in determining whether or not to issue a temporary injunction to preserve the rights of the parties pending a final trial of the case, and when that discretion is exercised its order should not be overturned unless the record discloses a clear abuse of discretion."

See also Transport Co. of Texas v. Robertson Transport, 152 Tex. 551, 261 S.W.2d 549.

■ The rule is well settled, in cases of this kind, that the granting of an injunction will depend on specific circumstances, as to whether equitable considerations in favor of granting it overbalance the legal right of the defendant to bring his action in the sister state. 6 A.L.R.2d 900.

■ It has been established, beyond question, that the power of a court of equity, where it has jurisdiction of the cause and of the parties to enjoin a person from beginning or prosecuting an action in another state is not denied. It is to be observed that the decree is not against the court of the other state, but in personam against the person enjoined. 24–A Tex. Jur. "Injunctions" § 76. The rule was settled by the United States Supreme Court in Cole v. Cunningham, 133 U.S. 107, 10 S.Ct. 269, 33 L.Ed. 538 and by the Supreme Court of Texas in Moton v. Hull, 77 Tex. 80, 13 S.W. 849, 8 L.R.A. 722. The rule was reiterated and confirmed by the Texas Supreme Court as late as March 1961 in the case of University of Texas et al. v. Morris, Tex., 344 S.W.2d 426, 428 where the Court said:

"A district court having jurisdiction of the parties and the subject matter may enjoin a party from prosecuting a cause of action in another court when such relief is necessary to prevent a multiplicity of suits, or avoid vexatious litigation, or prohibit the use of the ju-

dicial processes for purposes of harassment. (Citing authorities.)"

Appellants in their brief, admit this to be the law and concede that the only real question presented by this appeal is whether the trial court abused his discretion in granting the temporary injunction.

In our consideration of this question we are keenly aware of the well-established rule which is succinctly set forth in 43 C.J.S. Injunctions § 49, p. 499:

"A court of one state or country, which has acquired jurisdiction of the parties, has power on proper cause shown, as discussed in Courts § 554, to enjoin them from proceeding with an action in another state or country, particularly where such parties are citizens or residents of the State, or with respect to a controversy between the same parties of which it obtained jurisdiction prior to the foreign court; but this power should be exercised sparingly, and not unless a clear equity is presented requiring the interposition of the court to prevent manifest wrong and injustice."

This same rule has been followed by Texas Courts for many years. 24–A Tex. Jur. "Injunctions" § 76, pp. 136–137 and cases cited.

So we are faced squarely with the question of whether, under this record, sufficient showing is made requiring the interposition of the Texas Court of Equity to prevent that which equity abhors. Having given careful consideration to the question we are of the opinion that the record in this case does not reveal an abuse of discretion and that the chancellor was correct in the issuance of the temporary writ.

In arriving at this answer, and while it is of great importance, we are not motivated entirely by the question of convenience or the rationale of the doctrine of forum non conveniens. The doctrine of forum non conveniens has never been offi-cially declared to be effective in our state courts. It is applicable in Federal cases. 28 U.S.C.A. § 1404(a). In addition to consideration of the rationale of forum non conveniens, we are motivated, in large measure, by the overall facts of this case, as well as the facts in the Delaware case, which point with clarity to the fact that the Texas Court's action by injunction will prevent harassment and a multiplicity of suits, all contrary to the orderly administration of justice.

Considering first the question of convenience, we are confronted with the unimpeached testimony of John P. Thompson, relating the tremendous amount of expense, cost, and loss of time, which would be incident to the trial of this case in Delaware. This testimony, standing alone, finds support in many authorities throughout the United States for the granting of an equitable relief in the form of injunction. Wabash Ry. Co. v. Peterson, 187 Iowa 1331, 175 N.W. 523; Miller v. Gittings, 85 Md. 601, 37 A. 372; N. Y. C. & St. Louis Ry. Co. v. Matzinger, 136 Ohio St. 271, 25 N.E.2d 349; O'Loughlin v. O'Loughlin, 6 N.J. 170, 78 A.2d 64; Poole v. Mississippi Publishers Corp., 208 Miss. 364, 44 So.2d 467; Bankers Life Co. v. Loring, 217 Iowa 534, 250 N.W. 8; and cases cited in comprehensive note found in 6 A.L.R.2d 896.

In answer to appellee's contention concerning convenience of trial, appellants rely upon such cases as Brand v. Eubank, Tex. Civ.App., 81 S.W.2d 1023; Wade v. Crump, Tex.Civ.App., 173 S.W. 538; Pavey v. McFarland, Tex.Civ.App., 234 S.W. 591; William Cameron & Co. v. Abbott, Tex. Civ.App., 258 S.W. 562; Richardson v. Kent, Tex.Civ.App., 21 S.W.2d 72 and Garrett v. Phillips Petroleum Co., Tex.Civ.App., 218 S.W.2d 238. However, a close examination of these authorities reveal different facts and circumstances which make them easily distinguishable from the facts in the instant appeal. In these cases the facts reveal the identity of the parties as being the same in each case. Moreover, in each

of these cases the issues are virtually the same in both jurisdiction and in most instances the cases involved forums which were adjoining across the states lines and therefore the question of cost and expense was not paramount.

While the question of convenience of trial is a paramount question presented here, a more serious and important question is presented by this record. Equity looks with favor upon a complete disposition of controversies in one action rather than in multiple suits. Equity abhors a multiplicity of actions. As so aptly stated in 22 Tex.Jur.2d § 40, pp. 583–584, equity looks through superficial fictions and acts on the facts, giving them controlling effect. Equity looks to the substance and not the shadow, to the spirit and not the letter. It seeks justice rather than technicality, truth rather than evasion, common sense rather than quibbling. Equity abhors technical rules and restrictions. A court of equity will depart from rigid rules of law whenever it is necessary to accomplish the ends of justice. When we give applications to these well-recognized maxims of equity to the facts in the case here presented no difficulty is encountered in arriving at the conclusion that the chancellor below acted correctly.

The vital fact presented by this record is that *all parties and all issues* are before the Texas Court for *final adjudication* whereas *all parties* and *all issues* are *not before the Delaware court for final adjudication*. This fact, in our opinion, together with the question of convenience, manifestly outweighs the consideration of right of a party to select his forum. The Delaware suit was filed by residents of Texas, claiming that the assets of the Florida partnership and of certain relative realty corporations which lease store buildings and equipment to the partnership, are held in constructive trust for the Southland Corporation. They ask the Delaware court to take away from the assets of the Florida partnership and the relative corporations from the present owners and to vest the title to such assets in Southland. But

all these assets, buildings and equipment are located in Florida. The Delaware court has no jurisdiction in rem as applied to these assets, and no control over the assets, as such. Nor does the Delaware court have jurisdiction over all individuals and companies who own the assets. There are some twenty persons and other entities owning interest in the Florida partnership who do not live in Delaware or have any property in Delaware subject to attachment or own any stock of Southland. Furthermore, the five corporations which lease the grocery store buildings and the equipment to the Florida partnership have no assets in Delaware and own no stock in Southland which could be seized by a Delaware court. There is no manner by which the Delaware court could obtain jurisdiction over the named Florida partners and the relative real estate corporations. Accordingly, the Delaware court could not enter any effective decree as applied to these Florida partners and the relative Florida real estate corporations which have not appeared in the Delaware action and are not subject to the jurisdiction of the Delaware court. The Texas residents who filed the Delaware suit could not accomplish in Delaware what they are trying to accomplish without recourse to other suits in Florida and Texas courts, or both. A multiplicity of suits would naturally follow.

On the other hand, all of the Florida partners and all of the corporations are parties to the Texas suit and subject to the jurisdiction of the Texas court which can enter a complete and effective decree which the Delaware court cannot. Applying pure reason and common sense, as equity will do, we find no abuse of the trial court's discretion when it is exercised in a manner that will permit an orderly and effective disposition of the controversy as opposed to piecemeal disposition in multiple suits which may have conflicting results.

While not necessary to the disposition of this appeal, it is interesting to note that subsequent to the entry of the order in the Texas court, the chancellor in the Delaware

court, acting upon application by an intervenor to set the Delaware case down for trial, denied such application and, in effect, agrees with our conclusion concerning the availability of the parties and witnesses before the Texas court in order to effect a final judgment. See the Delaware chancellor's statement in the footnote.[1]

### Conclusion

We have given careful consideration to all of appellants' arguments presented under their points and find that they are without merit and should be overruled. For the reasons stated, we hold that the orderly administration of justice dictates that the Texas case be adjudicated with the end result that all rights between all parties may be decided by one decree, thereby avoiding a multiplicity of actions which is eminent if the Delaware action is allowed to proceed. We further hold that the equities of convenience of parties is clearly apparent in favor of the Texas jurisdiction.

In rendering this decision we wish to make it perfectly clear that we are in no manner attempting to interfere with, or take arbitrary action against, the Delaware court, as such. As revealed by all the authorities on this subject, this action is in personam against the parties subject to the Texas jurisdiction and is not to be considered an action in rem directed against the Delaware court. It is only due to the particular facts and circumstances presented by this record that we apply the well-recognized doctrines of equity which lead to the results herein announced.

The judgment of the trial court is affirmed.

---

[1].       Court of Chancery
            of the
        State of Delaware
Collins J. Seitz          Court House
   Chancellor      Wilmington, Delaware.
        May 23, 1961
Richard F. Coroon, Esquire
   Berl, Potter & Anderson
Aaron Finger, Esquire,
   Richard Layton & Finger
Wilmington 1, Delaware.
Re: Opal C. Barr, et al. v.
      John P. Thompson, et al.
      Civil Action No. 1412.
Gentlemen:
   This derivative action is being pressed by an intervening plaintiff who is not subject to the injunctive power of the Texas trial court, which enjoined the original plaintiffs from proceeding here. Plaintiff intervenor has applied for a trial date.
   Defendants' application to stay the fixing of a trial date poses a troublesome problem. I say this primarily because the Texas trial court has in effect permitted defendants to select the forum in which they will be sued. Indeed, they have thereby been permitted to substitute a jury for a non-jury action. The Texas court has done this by preventing Texas citizens from continuing the prosecution of this class derivative action which was filed before the Texas action. I could better understand their action if the Texas suit had been first in time. However, my concern does not dispose of the matter.

I do not consider persuasive any single argument advanced by defendants. However, the cumulative effect of several of them is such that I will reluctantly exercise my discretion to stay the fixing of a trial date here. The principal facts relied upon are as follows:
   1. The Texas case was fixed for trial before any application was made here.
   2. Now all of the parties involved in the transactions under attack are subject to the jurisdiction of this court. They are before the Texas court.
   3. The principal and numerous witnesses are in Texas and available to testify there at a substantial saving in expenses as compared with a trial in Delaware.
   I should add that the apparent magnitude of this case is such that it could not be tried before the time fixed for the Texas trial.
   I assume that the Texas decision will be in such form that it can be ascertained whether the case was decided on the merits. This may be important to the future of the case.
   Defendants' motion to stay will be granted. An appropriate order may be presented.
                     Very truly yours,
                     /s/ Collins J. Seitz
                     Chancellor.
CJS/mb
cc: Register in Chancery.