Mary Jane Hawke and Ella Pierce,

*vs.*

George Lodge, Trustee under the will of Joshua Pyle, deceased, and R. Fannie Hobson, Administratrix of John W. Paynter, deceased.

*New Castle, Nov. 9, 1910.*

A gift of money in trust for A. for life and at her death to be divided among her three children, or the survivors or survivor of them at their majority, is to those children who survive the life tenant, and if all three survive the testator and attain their majority and one of them dies before the life tenant, the fund is to be divided between the two who survive the life tenant.

Survivorship, in gifts to several with survivorship among them, relates to the death of the life tenant, if preceded by a life estate.

If a gift after a life estate is to several persons with survivorship among them at their majority, survivorship refers to the period of division, the death of the life tenant, and not the time of payment, the attaining majority, for the time of payment is independent of the gift.

Bill for Construction of a Will.    Joshua Pyle by his will directed his estate to be converted into money and made the following gift, among others:

"To my daughter, Esther Ann Paynter, wife of Thomas Paynter, the sum of twelve hundred dollars, which sum I direct shall be invested by my executor, herein after named, the interest of which sum shall be paid annually to my daughter, Esther Ann Paynter, during her natural life, and at her decease, both principal and interest (if any having accrued thereon) to be equally divided among her three children, or the survivors or survivor of them at their majority."

At the date of the will Esther Ann Paynter had three children, Mary Jane Hawke and Ella Pierce, the complainants, and a son, John W. Paynter.   All three children survived the testator and attained their majority in the life of their mother.

John W. Paynter died before his mother.   The administratrix of John W. Paynter and the trustee under the will of Joshua Pyle are the defendants in the bill brought by the complainants to obtain payment of the whole of the trust estate.   There was no dispute as to the facts, and the cause was heard on bill and answer.

*William S. Hilles*, for the complainants.   Strange though it may seem, this question which has so frequently been before the courts of other states and of England, seems never to have been directly decided by any reported case in this State, and it is therefore necessary to consider the authorities of other jurisdictions.   The history of the English cases is completely treated in 2 *Jarman on Wills, pps.* 721 to 737.   The author there summarizes his examination of the English authorities.   *Hawkins on Wills,* 261;   25 *Eng. Ruling Cases,* 731; 2 *Wms. on Exrs., p.* 1575;   30 *A. & E. Encyc. L.* (2 Ed.) 808, 809;   2 *Redfield on Wills,* 379.

Such then has been the law in England since the case of *Cripps v. Wolcott,* 4 *Madd.* 11, which was decided in 1819. The English rule is established in California, *In the Matter of Winter,* 114 *Cal.* 186; in Illinois, *Ridgeway v. Underwood,* 67 *Ill.* 419; · *Blatchford v. Newberry,* 99 *Ill.* 11;  In Kentucky. *Hughes v. Hughes,* 51 *Ky.* (12 *B. Mon.*) 115;  *Wren v. Hynes,* 59 *Ky.* (2 *Metc.*) 130; In Massachusetts, *Hurlburt v. Emerson,* 16 *Mass.* 240;  *Olney v. Hull,* 21 *Pick.* 311;  *Denny v. Kettell,* 135 *Mass.* 138;  *Coveny v. McLaughlin,* 148 *Mass.* 576;  In New Hampshire, *Hill v. Rockingham Bank,* 45 *N. H.* 270;  *O'Brien v. O'Leary,* 64 *N. H.* 332;  *Hall v. Blodgett,* 70 *N. H.* 437;  In New Jersey, *Van Tilburgh v. Hollinshead,* 14 *N. J. Eq.* 32;  *Williamson v. Chamberlain,* 10 *N. J. Eq.* 373;  *Slack v. Bird,* 23 *N. J. Eq.* 238;  *Dutton v. Pugh,* 45 *N. J. L.* 426;  *Ashhurst v. Potter,* 53 *N. J. Eq.* 608;   North Carolina, *Biddle v. Hoyt,* 1 *Jones Eq.* 159;  *Vass v. Freeman,* 3 *Jones Eq.* 221; In Ohio, *Sinton v. Boyd,* 19 *O. St.* 30;  In South Carolina, *Evans v. Godbold,* 6 *Rich. Eq.* 26;  *Schoppert v. Gillam,* 6 *Rich. Eq.* 83;  *Roundtree v. Roundtree,* 26 *S. C.* 450;  *Simpson v. Cherry,* 34 *S. C.* 68;  *Selman v. Robertson,* 46 *S. C.* 263;  In Wisconsin, *In re Moran's Will,* 118 *Wis.*

177.    This last case is particularly interesting in that it attempts what to my mind is impossible of achievement, namely, to reconcile the New York cases.    In Maryland, *Ridgely v. Ridgely*, 100 *Md.* 230.    While I have been able to find no New York case expressly overruling the case of *Moore v. Lyons*, 25 *Wend.* 119, a somewhat critical examination of the cases succeeding this one in New York makes it in my judgment absolutely impossible to reconcile the subsequent cases with the general statement in the Moore case.    The same difficulty exists of deducing any general rule from the cases in Pennsylvania.    I have been unable to find any case in that State which sustains the contention here made.

As appears from the foregoing, the English authorities after a period of uncertainty, finally departed from an untenable rule and adopted the one which has been found for a hundred years to be free from the difficulties which surrounded the earlier decisions; and a majority of those states which before the adoption of the modern English rule had not accepted the old English doctrine, have accepted the modern English rule, and the states so deciding are certainly more numerous and their courts entitled to at least as much consideration as those adopting the other view.

It is apparent that in the Pyle will the addition of the words "at their majority" have no bearing upon the discussion. *Theobald on Wills*, 511; *Huffam v. Hubbard*, 16 *Beav.* 579; *Pope v. Whitcombe*, 3 *Russ.* 124; *Crozier v. Fisher*, 4 *Russ.* 398; *Lill v. Lill*, 23 *Beav.* 446; *Daniel v. Gossett*, 19 *Beav.* 478.

*T. Bayard Heisel*, for the defendants.    The law in England at this time seems to be that the words "survivors or survivor" and "survivorship" when used in wills, refer to the period of division or distribution, and if a previous life estate is given, the period of distribution is, of course, the death of the tenant for life, and the survivors at such death, will take the whole legacy.    But such is not the uniform law in this country, and the courts here have refused in many cases to follow the English doctrine, as will be shown by the cases hereinafter cited. I have been unable to find any case in this State in which

"survivors or survivor" has been construed by the Courts, but in New York, Pennsylvania, Georgia, Indiana, Illinois and other states, the courts have held contrary to the English doctrine. *Johnson v. Morton*, 10 *Pa. St.* 245; *Ross v. Drake*, 37 *Pa. St.* 373; *Vickers v. Stone*, 4 *Ga.* 461; *Clarke v. Shawen*, 190 *Ill.* 47; *Grimmer v. Friederich*, 164 *Ill.* 245; *Tindall v. Miller*, 143 *Ind.* 337; *Ackerman v. Ackerman*, 63 *N. Y. App. Div.* 370; *Shangle v. Hallock*, 6 *N. Y. App. Div.* 55; *Connelly v. O'Brien*, 166 *N. Y.* 406; *Nelson v. Russell*, 135 *N. Y.* 137; *Thompson v. Hill*, 94 *N. Y. Sup. Ct.* 111. We contend that to construe the words "survivors or survivor of them *at their majority*" does not conflict with the English construction of "survivors or survivor," when not followed by the words, "at their majority". *Theobald on Wills*, 510; *Crozier v. Fisher*, 4 *Russ.* 398; *Bouverie v. Bouverie*, 2 *Phillips* 349; *Alty v. Moss*, 34 *L. T. R.* 312; *Tribe v. Newland*, 5 *De G. & S.* 236; *Knight v. Knight*, 25 *Beav.* 111; *Forrester v. Smith*, 2 *Ir. Ch.* 70; *Corneck v. Wadman*, *L. R.* 7 *Eq.* 80; *Berry v. Briant*, 2 *Dr. & Sm.* 1.

The Chancellor: It is to be determined in this case whether the words of survivorship in the will relate to the period of distribution, the death of the life tenant, or to the time when the three children severally attain their majority, as they all survived the testator. This question has never been directly decided in this State in any reported case, though it has been passed on by many cases in the courts of England and this country. In this State the courts have favored an early vesting of estates given in remainder, especially where the subject of the gift is real estate. *Wright v. Gooden*, 6 *Houst.* 397. But in this cited case there were no words of survivorship to be construed.

In England prior to the case of *Cripps v. Wolcott*, 4 *Madd.* 11, decided in 1817, there was no uniformity in the decisions respecting gifts to survivors preceded by a life estate; but since that case the law has been settled, that the death of the life tenant and not that of the testator is the period to which words of survivorship relate. In *Jarman on Wills* the English rule is thus stated, after a consideration of many of the cases:

"In this state of the authorities, one scarcely need hesitate to affirm that the rule which reads a gift to survivors simply as applying to objects

living at the death of the testator, is confined to those cases in which there is no other period to which survivorship can be referred; and that where such gift is preceded by a life or other prior interest, it takes effect in favor of those who survive the period of distribution, and of those only."

To the same effect is *Hawkins on Wills*, 261; *Theobald on Wills*, 508. Indeed, it is conceded that such is the general rule in England. There is no uniformity in the decisions of the courts of the several states in this country, and they cannot be harmonized, and in some states statutes have been passed declaring the law on the question. California, Illinois, Kentucky, Massachusetts, New Hampshire, New Jersey, North Carolina, Ohio, South Carolina and Wisconsin seem to have adopted the present English rule. So also has Maryland, apparently, in *Ridgely v. Ridgely*, 100 *Md.* 230, 59 *Atl.* 731. New York has probably followed a different rule, though the cases there cannot be reconciled, and no attempt will be made to do so; and there is a like uncertainty as to the position of the courts in Pennsylvania. Georgia, Indiana and some other states have adopted a rule different from the English rule. Probably the great weight of the authorities in this country is for the English rule. 30 *Am. & Eng. Ency. of Law* (2d *Ed.*) 808, 809.

In view of this conflict of authority, this Court will adopt the rule of the English cases, which followed *Cripps v. Wolcott*, and now holds to the general rule, that where there is a gift of personal property to several persons, or the survivors or survivor of them, preceded by a life estate, the survivorship relates to the death of the life tenant, and not of the testator, and only those persons who survive the life tenant are entitled to shares in the bequest. It is believed that the adoption of this rule will more effectually carry out the intention of the testator in most cases than any other rule, for it seems to be the natural meaning of the words and one to be adopted by those not unduly influenced by the desire for a vesting of estates and interests at the earliest period. Whether or not the rule applies also to devises of real estate is not here decided, because it is not necessary to do so.

It is urgently contended, however, by the defendants' solicitor, that whatever may be the general rule as to survivorship

Opinion.

after a life estate being referred to the period of distribution, there is another principle made applicable by the words, "at their majority," which makes the attaining their majority the date of vesting, though payment be postponed until the death of the life tenant; so that as John W. Paynter survived the testator and attained twenty-one years of age, he took a vested one-third interest in the trust fund, of which he was not divested by his death before the life tenant, his mother, and that his share is now payable to his administrator.   There are cases deciding that if, following a gift of a life estate, there be a gift to several persons or to a class of persons upon their attaining twenty-one years, with the benefit of survivorship, then the words of survivorship relate to the period when the age is attained, and not to the death of the life tenant; and those persons who attain the age during the life of the life tenant, and die before the life tenant, take shares with those who attain such age and survive the life tenant. Survivorship in such cases is referred to the period of vesting and not of distribution.   *Hawkins on Wills*, *264; *Theobald on Wills*, 510; *Bouverie v. Bouverie,* 2 *Phillips*, 349; *Crozier v. Fisher*, 4 *Russ*. 398; *Corneck v. Wadman*, L. R. 7 *Eq.* 80; *Berry v. Briant*, 2 *Dr. & Sm.* 1; *Tribe v. Newland*, 5 *De G. & Sm.* 236 (1852).   In some of these cases cited there were words in the gift which enabled the Court more readily to apply the above principle, which is thus stated in *Theobald on Wills*, 510:

"If the gift is, after a life interest, to a class to be paid at twenty-one with benefit of survivorship, survivorship refers most naturally to the age of twenty-one just before mentioned."

Theobald says, very wisely, that this construction is assisted by a gift over upon the death of all under twenty-one, and cites *Salisbury v. Lamb*, *Ambler* 383; *Bouverie v. Bouverie*, 2 *Phillips*, 349; and *Alty v. Moss*, 34 *L. T. R.* (*N. S.*) 312; and that it is rebutted if the gift over is upon the death of all before the life tenant, and cites cases to the latter point.   But neither of these provisions are found in Joshua Pyle's will, and so no application is made of these principles in determining the question under consideration.

It will be noted, however, that in the will of Joshua Pyle under consideration, the words of survivorship are not in the same position in the sentence to be construed as in the cases above cited and relied on by the defendants.   Here instead of a gift to be paid at twenty-one with benefit of survivorship, the gift is to a class with benefit of survivorship at their majority, meaning at most payable at their majority, or when and as they severally attain twenty-one years of age. There are authorities which hold that, when the direction as to payment is independent of the gift to survivors, words of survivorship refer to distribution, and *Theobald* thus states the principle:

"If, however, the direction as to payment is independent of the gift to survivors, the ordinary rule prevails; if, for instance, the gift is to surviving children at twenty-one."   *Theobald on Wills*, *p.* 511.

And he cites as his authority *Huffam v. Hubbard*, 16 *Beav.* 579; *Pope v. Whitcombe*, 3 *Russ.* 124; *Crozier v. Fisher*, 4 *Russ.* 398; *Lill v. Lill*, 23 *Beav.* 446: and *Daniel v. Gorsett*, 19 *Beav.* 478.   This principle seems clearly applicable to the case at bar, and is controlling if established by satisfactory decisions.   The cases of *Huffam v. Hubbard*, and *Pope v. Whitcombe* sustained the principle stated by the learned author, while the other cases he cites do not seem to do so clearly, though they are not opposed and may be disregarded because of the peculiar terms of the gifts construed.   In *Huffam v. Hubbard*, 16 *Beav.* 579 (1853), money was bequeathed in trust for the testator's wife for life and at her death to her surviving children "when they have attained their twenty-one years, share and share alike." There were four children, but three only survived their mother. *Held*, that the representative of the deceased child took nothing.   Sir John Romily, M. R., followed *Cripps v. Wolcott*, and distinguished *Crozier v. Fisher*, saying that in the latter case there was an express direction that the distibution should be when the youngest child attained twenty-one years.   It should be noted that there is great similarity between the language of the will in this case and that of Joshua Pyle, though it does not appear (perhaps because considered unimportant)

whether the two children who died before the life tenant had then attained twenty-one years of age.  In *Pope v. Whitcombe*, 3 *Russ*. 124 (1827), there was a gift by will in trust for the testatrix's brother for life and after his death a gift to four persons and the survivors or survivor of them, share and share alike, to be paid to them respectively as they should attain the age of twenty-one years.  Two of the four persons died in the life of the life tenant, and it was held, that they did not take vested interests, but the whole of the estate belonged to the two survivors.  Whether or not the two beneficiaries who died had then attained the age of twenty-one years does not appear.  The case of *Knight v. Knight*, 25 *Beav*. 111, seems to be clearly *contra*.  There money was given in trust for a life, followed by a gift of money "equally among my grandchildren with benefit of survivorship upon their severally attaining his or their age of twenty-one years."  At the termination of the life estate there were five grandchildren who had then attained twenty-one years and another grandchild, Henry, had attained twenty-one years and died before the life tenant. *Held*, the survivorship referred to the period of attaining twenty-one years and not the death of the life tenant.  Therefore the fund was divided into six parts and the representatives of Henry took one.  The case of *Alty v. Moss*, 34 *L. T. R. (N. S.)* 312, cited and much relied on by the defendants' solicitor, would be an authority for the defendants' contention, except that there the will contained a provision not in Joshua Pyle's will, viz., a gift over in case all the children died before attaining their majority.  This gift over indicates that survivorship relates to the attaining majority, and this is evidently the view of Theobald.  See page 511, above referred to.

In this state of the authorities, the decision in *Huffam v. Hubbard* and *Pope v. Whitcombe* will be followed.  They are approved by two learned writers, Theobald and Hawkins, who with their peculiar ability consider both principles and authorities scientifically and are unaffected by any of the hardships which sometimes result from the adoption of one rule rather than another.  Besides, the reasonableness of the rule commends it.  Looking at Joshua Pyle's will the simplest and most

natural construction is, that survivorship relates to the time of division, the death of Esther Ann Paynter; and though divided at her death, the fund is not payable until her children who survive her shall severally attain twenty-one years of age, and the words "at their majority" can have no wider meaning. This conclusion eliminates John W. Paynter from participating in the division of the fund, as he was not alive at the death of his mother, though he had attained his majority before he died.

A decree will be entered accordingly.